## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | |
| : | |
| Plaintiff,　　　　: | |
| : | |
| v.　　　　　　: | |
| : | Civil Action No. 1:19-cv-08454 |
| TODAY'S GROWTH CONSULTANT, INC.　: | (filed in the United States District |
| (dba THE INCOME STORE)　　　: | Court, Northern District of Illinois) |
| : | |
| and　　　　　　: | |
| : | |
| KENNETH D. COURTRIGHT, III,　　: | |
| : | |
| Defendants.　: | |
| : | |
| MELANIE E. DAMIAN, AS RECEIVER OF　: | ANCILLARY CASE NO. |
| TODAY'S GROWTH CONSULTANT, INC.　: | |
| (dba THE INCOME STORE),　　　: | |
| : | |
| Plaintiff,　　　: | |
| : | |
| v.　　　　　: | |
| : | |
| WILLIAM LONGCORE　　: | |
| : | |
| Defendant.　: | |

## **COMPLAINT**

Melanie E. Damian, the court-appointed receiver (**"Plaintiff"** or the **"Receiver"**) in the above-captioned enforcement action, files this Complaint stating claims for fraudulent transfers and unjust enrichment against Defendant, William Longcore, and states:

## PROCEDURAL HISTORY

1.      On December 30, 2019, the Illinois District Court for the Northern District of Illinois, Civil Action No. 1:19-cv-08454 (the **"Illinois District Court"**) entered a Temporary Restraining Order Freezing Assets and Imposing Other Emergency Relief [ECF No. 20] (**"TRO"**) and an Order Appointing Receiver [ECF No. 19] (**"Appointment Order"**) in this Securities and Exchange Commission (**"SEC"**) enforcement action (the **"SEC Action"**). In the TRO, the Illinois District Court ordered all of the Defendants' assets frozen to preserve the *status quo*. *See* ECF No. 20 at pp. 6-7. Further, the TRO ordered the preservation of all Defendants' documents, books and records concerning (1) the allegations of the Complaint, (2) any securities offered for sale by Defendant Today's Growth Consultant, Inc. (dba The Income Store) (**"TGC"** or the **"Receivership Defendant"**), including, but not limited to Consulting Performance Agreements (each an **"Agreement"** and collectively, the **"Agreements"**), (3) any communications with, between, or among either Defendant. *See* ECF No. 20 at pp. 7-8.

2.      Additionally, TGC and Kenneth D. Courtright, III (**"Courtright"**) were each ordered to provide a sworn accounting to the Illinois District Court detailing, among other things, each Agreement entered into by TGC, each loan or indebtedness entered into by TGC, all current assets and liabilities, and any transaction of $10,000 or more. *See* ECF No. 20 at pp. 8-11.

3.      The Receiver's mandate was to take all actions necessary to implement the terms of the TRO by, among other things, taking possession, custody and control of all of Defendants' assets, establishing control of TGC's business, ensuring that Defendants' assets were frozen and preventing their withdrawal or misapplication, obtaining and preserving documents and records pertaining to Defendants' assets, transactions, and business operations, and performing all acts necessary to protect and preserve the Receivership Estate. *See* ECF No. 19 at pp. 2-4.

{02058831;v2 }

4.     The Receiver analyzed the business operations, including projected and historic income and expenses and determined that without additional investor funds the operations were not sustainable even in the short term. Even with substantial infusion of investor funds, the TGC/Income Store records indicate a loss in 2018 of $5.7 million and in 2019 of $7.5 million. Indeed, the payroll expense alone exceeded TGC's website/e-commerce revenue.

5.     The Receiver's review of TGC's books and records confirm the SEC's allegations that new investor funds and loans, and not website revenue, were used to pay the investors/website partners.  For example, in 2018 website revenue was under $2 million while the purported website payout to investors was approximately $12.7 million; and, likewise, in 2019 website revenue was under $4 million while the purported website investor payout was $16.5 million. In short, TGC's business was a Ponzi scheme orchestrated by Courtright.

6.     On March 2, 2020, the Illinois District Court entered two separate stipulated preliminary injunction orders titled Order Imposing Preliminary Injunction Freezing Assets and Granting Other Relief [ECF Nos. 55, 56] (collectively, the **"PI Orders"**) against each of the Receivership Defendants, TGC and Courtright, which shall remain in effect until the Illinois District Court's determination of the merits of the allegations set forth in the SEC's Complaint or further order of the Court.

## THE PARTIES

### The Receiver

7.     Plaintiff, Melanie E. Damian, was appointed by the Illinois District Court as Receiver.  Plaintiff brings this action in her capacity as Receiver, pursuant to the authority granted by the Illinois District Court in the TRO, Appointment Order and the Stipulation and each of the PI Orders entered in the SEC Action.

{02058831;v2 }

**The Defendant**

8.     Defendant William Longcore (**"Longcore"** or **"Defendant"**) is a resident of Lancaster, Pennsylvania, is over 18 years of age, and is otherwise *sui juris*. At all times material hereto, Longcore was TGC's "financial controller", and as such was an insider of TGC, and received substantial amounts of funds from TGC purportedly in exchange for services which did not provide value to TGC. *See* 740 ILCS 160/2 (g).

9.     The payments that Defendant received from TGC, which the Receiver is seeking to recover in this action, were obtained from the investors (a/k/a **"website partners"**) and creditors TGC had defrauded in connection with the fraudulent scheme that Courtright perpetrated through TGC.

## JURISDICTION AND VENUE

10.     This Complaint is brought to accomplish the ends sought and directed by the Illinois District Court in the SEC Action, which, among other things, appointed Plaintiff as Receiver and authorized her to commence actions to recover assets of the Receivership Estate. This action is related to the claims in the SEC Action, over which this Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).   Pursuant to the principles of ancillary jurisdiction or supplemental jurisdiction, this Court has supplemental jurisdiction over the claims set forth herein pursuant to Title 28, United States Code, Section 1367(a). Therefore, this Court has subject matter jurisdiction over this action.

11.     This Court has personal jurisdiction over Defendant because Defendant is a resident of Lancaster, Pennsylvania. Defendant received transfers from and/or conducted

4

business with TGC, which in turn was conducting, engaging in, and carrying on a fraudulent business or venture in, among other locations, the Eastern District of Pennsylvania. Further, the transfers that Defendant received from TGC's bank accounts in Illinois were proceeds from TGC's fraudulent scheme conducted, in part, in the Eastern District of Pennsylvania.

12.     Venue is proper in the Eastern District of Pennsylvania, pursuant to Title 28, United States Code, Sections 754, 1391(b), and 1692, because this action is brought to accomplish the objectives of the TRO, the Appointment Order, and the PI Orders and is thus ancillary to the Illinois District Court's exclusive jurisdiction over the Receivership Estate. Further, Defendant resides in the Eastern District of Pennsylvania and several of the acts described in this Complaint occurred in this District.

### THE RECEIVER'S STANDING
### TO BRING THE CLAIMS ASSERTED HEREIN

13.     The Receiver has standing to bring the claims asserted in this Complaint pursuant to the Illinois District Court's TRO, Appointment Order, and PI Orders.  The Receiver's mandate was to, *inter alia*, take possession, custody, and control of TGC's assets, establish control of TGC's businesses (to the extent they exist and continue to operate), prevent the withdrawal or misapplication of TGC's funds, collect funds due to TGC, obtain documents and records pertaining to TGC's assets, transactions, and business operations, and perform all acts necessary to preserve the value of the Receivership Estate. *See* ECF No. 19 at pp. 2-4.

14.     Pursuant to the Appointment Order, the Receiver was directed to "assume and control the operation of Receivership Defendant and shall pursue and preserve all claims or interests of the Receivership Defendant. The Receiver may continue and conduct the business of the Receivership Defendant in such manner, to such extent and for such duration as the Receiver may deem to be necessary or appropriate, if at all." *See* ECF No. 19, at p. 3.  Included among

such claims are fraudulent transfer actions to recover for the benefit of the Estate amounts that TGC fraudulently transferred to insiders, affiliates and third parties.

15.     The Receiver, on behalf of receivership entity TGC, as a "creditor" of TGC as defined in 740 ILCS § 160/1, has standing to bring the fraudulent transfer claims asserted in this Complaint under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS § 160 and common law unjust enrichment (pled in the alternative to the fraudulent transfer claims).

## FACTUAL ALLEGATIONS

### The TGC Fraudulent Scheme

16.     From at least 2017 through October 2019, TGC and Courtright raised at least $75 million from more than 500 investors who entered into "Consulting Performance Agreements" with TGC (the **"Agreements"**) pursuant to which the investors would provide up-front payments and ongoing payments in the form of advertising and eCommerce revenues to TGC, and TGC promised to pay investors a minimum guaranteed rate of return, in perpetuity, on revenues generated by websites that TGC acquires or builds for the investors and then develops, maintains, and hosts.

17.     In Particular, under the Agreements, each investor was guaranteed a percentage of the revenues of the websites that would be assigned to them or a minimum annual guaranteed return (ranging from 13% to 20%), to be paid monthly, even if the website did not generate sufficient revenue to pay the promised monthly payment.

18.     The Agreements tout TGC's experience and expertise, informing investors that TGC's "growth formulas" with a foundation in page one Google placement as well as a tailored eCommerce strategy would build a bridge to an array of revenue streams for the investor sites.

{02058831;v2 }

19.     Further, under paragraph O of the Agreements, the investor's up-front fee was to be used "exclusively for the purchase, hosting, maintenance and marketing of the revenue generating website…"

20.     And, TGC represented to the investors that it is in "satisfactory financial condition, solvent, able to pay its bills when due and financially able to perform its contractual duties" and that it is "debt-free . . . with no accounts payable or loans outstanding."

21.     The foregoing representations to investors were false and not supported by TGC's own records.  Indeed, the revenue that was generated from all of the websites each month was significantly less than the monthly payment obligations to the investors and certainly was not sufficient to cover both those monthly payments and TGC's monthly overhead expenses.   In addition, despite contrary representations to the investors, the websites and domains with minor exceptions were maintained in the name of, and owned by, TGC and not the individual investors.  And, TGC, for at least the past three years, was not solvent or financially able to pay its bills when due (without the improper use of new investor funds) to meet its contractual obligations.

22.     In particular, since at least January 2017, the websites generated approximately $9 million in advertising and product sales revenue, but TGC paid at least $30 million to investors, purportedly pursuant to the Agreements.

23.     In 2019 alone, according to the Profit and Losses accounting from the company's records, website income was $3,724,809.00, but TGC paid $16.5 million to investors.  And, TGC generated "revenue" in the form of investments from investors (its largest source of revenue) of approximately $41.5 million and had operating expenses in the amount of $34,653,706, resulting in a net loss of $7,520,873.

{02058831;v2 }

24.    And, prior years reflect a similar discrepancy in revenues generated from investors in comparison with the amounts paid to investors based upon their investments.

25.    TGC also obtained loans from distressed lending companies and deposited the loan proceeds into the same TGC bank accounts into which TGC deposited the up-front payments it received from investors and the revenues from the websites.

26.    Because many of the websites were not generating sufficient revenues for TGC to pay the amounts due to the investors under the Agreements, TGC covered the significant shortfall primarily by using up-front fees it obtained from new and repeat investors who had entered into Agreements with TGC, and also by using the commingled proceeds of significant loans it received from lenders, to pay the minimum monthly payments it guaranteed to earlier investors under the Agreements, and to make payments towards the loans.

27.    Because TGC's business depended on the use of new investors' up-front payments (and perhaps loan proceeds) to cover its obligations to earlier investors, TGC was a classic Ponzi scheme.

28.    Based on the Receiver's analysis of TGC's operations and books and records, this business model as implemented by Defendant Courtright was not sustainable, feasible or profitable.

29.    In fact, TGC's business model resulted in significant losses to most of the investors.  Some investors received the return of their full investments plus additional amounts making them net winners, because they were early investors who received payments over a longer period of time before the commencement of the SEC Action, or Defendant Courtright chose to pay them more than the amounts due to them under the Agreements.  But the majority of investors received back significantly less than they had invested or nothing at all because they

8

invested closer in time to the commencement of the SEC Action, or Defendant Courtright chose not to pay them the amounts due to them under the Agreements making them net losers with a potential claim against the Receivership Estate.

**Preliminary Findings of Fraud Against TGC**

30.     As a result of this fraudulent behavior, the SEC commenced the SEC Action against TGC that resulted in entry of the TRO and PI Orders containing preliminary findings that TGC likely participated in a fraudulent securities scheme.

31.     At all times material hereto, Courtright, as principal and President, controlled and operated TGC as a means to carry out the fraudulent scheme, thereby causing TGC to commit violations of securities laws and rules, in breach of his fiduciary duties to TGC.  TGC was under the control of Courtright until the appointment of the Receiver and thus unable to seek recovery of the fraudulent transfers prior to that point.

32.     TGC made the transfers at Courtright's direction, as a result of his fraudulent domination, adverse interest in, and control of TGC and as part of his continued breaches of his fiduciary duties to TGC.

**The Insolvency of TGC**

33.     As a result of operating a Ponzi scheme, TGC was insolvent, undercapitalized, and operating at a loss.  During all relevant times, TGC did not have sufficient assets to pay its debts to investors and/or creditors as those debts became due.

34.     Because most investors have not received the return of their investment or all of the amounts due to them under the Agreements, these investors will have significant claims against the Receivership Estate to recover their investments.

{02058831;v2 }

**Transfers to Defendant**

35.     From September 14, 2017 through November 26, 2019, TGC made approximately 140 transfers of funds in the total amount of at least $429,960.34, to Defendant Longcore. These transfers originated from TGC's bank accounts located in Illinois. *See* Summary of Disbursements to William Longcore, attached hereto as **Exhibit "A"**.

36.     Collectively, the transfers to Defendant Longcore detailed *supra* and in Exhibit "A" totaling approximately $429,960.34 are hereinafter referred to as the "Transfers."

37.     The funds comprising the Transfers to Defendant were funds that TGC and/or Courtright fraudulently obtained from investors and/or creditors in the form of investments, fees and/or other payments made in connection with the Agreements.

38.     Defendant received the Transfers without providing reasonably equivalent value to TGC in exchange for those Transfers.

39.     Further, any services that Defendant may have provided to TGC only facilitated and perpetuated the fraud against current investors and recruiting new investors.  Thus, not only did Defendant not provide any reasonably equivalent value or any other benefit to TGC, but also Defendant increased the damages suffered by TGC by increasing the amounts owed to investors and creditors which will be reflected in any restitution that TGC will be required to pay.

40.     Moreover, at all material times, Defendant Longcore acted as TGC's "financial controller," worked closely with TGC's chief financial officer, and oversaw most, if not all, of TGC's incoming and outgoing wires and financial transactions with its investors.  As such, Defendant Longcore received the Transfers from TGC as an insider of TGC, and Longcore knew or should have known that TGC was being operated as a Ponzi scheme and/or that TGC was

{02058831;v2 }

making fraudulent misrepresentations to its investors regarding the use of their funds and, thus, he did not receive the Transfers in good faith.

41.    When TGC made the Transfers to Defendant, TGC intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

42.    Thus, TGC had the actual intent to delay, hinder, or defraud investors and creditors, and made the Transfers to delay, hinder, or defraud investors and creditors.

43.    TGC, and thereby the Receivership Estate, have been damaged significantly as a direct and proximate result of the Transfers as alleged above.  Such damages include, but are not limited to, losses due to the dissipation of investor funds for which no reasonably equivalent value was provided and other and further compensatory and consequential damages.

44.    Accordingly, the Receiver brings the instant action in order to collect monies that were improperly transferred, dissipated, misappropriated, or lost from TGC as a result of the fraudulent transfers to, and unjust enrichment of, Defendant Longcore.

45.    All conditions precedent to the bringing of this action have been performed or satisfied or have occurred.

46.    The Receiver was not appointed to take control of TGC until December 30, 2019, therefore, she could not have discovered the Transfers until that date at the earliest, and she did not even begin to discover some of the Transfers until May 2020. Accordingly, this action is brought within the pertinent statutory limitations period. *See* 740 ILCS 160/10.

47.    Because TGC was operated from its headquarters in Minooka, Illinois, and the Transfers came from TGC's bank accounts located in Illinois, Illinois law applies to the fraudulent transfer claims brought herein.

{02058831;v2 }

## CLAIMS FOR RELIEF

## COUNT I

**Violations of Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act
740 ILCS § 160/5(a)(1)**

48.     Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.     This is a claim to avoid and recover a fraudulent transfer pursuant to Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act.

50.     Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act provides:

> Sec. 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;

740 ILCS 160/5(a)(1).

51.     The Receiver acting on behalf, and standing in the shoes, of receivership entity TGC has standing within the meaning of the Illinois Uniform Fraudulent Transfer Act to seek the return of fraudulent transfers that Courtright transferred from TGC to investors and/or creditors pursuant to the actual fraud prong of the statute. 740 ILCS 160/5(a)(1).

52.     TGC's Transfers to Defendant were part of a Ponzi scheme, and thus as a matter of law, were made and/or directed by Courtright with actual intent to hinder, delay, or defraud the creditors of TGC.

53.     In particular, as detailed above, Courtright fraudulently, acting through his fraudulent domination, adverse interest in, and control of TGC, caused the transfer of at least

12

$429,960.34 in fraudulent transfers to the Defendant with an actual intent to hinder, delay, or defraud TGC's creditors.

54.     At all material times, Defendant was an insider of TGC and received the Transfers as compensation and/or commissions for the services that he provided to TGC to perpetuate its fraudulent scheme.

55.     Defendant received the Transfers without providing to TGC reasonably equivalent value in exchange for the Transfers.

56.     Any services that Defendant may have provided to TGC only facilitated and perpetuated the fraud against current investors and recruiting new investors.  Thus, Defendant did not provide any reasonably equivalent value or any other benefit to TGC but rather increased the damages suffered by TGC by increasing the amounts owed to investors and creditors which will be reflected in any restitution that TGC will be required to pay.

57.     At the time that TGC made the Transfers, Courtright was operating it as a fraudulent scheme and as a Ponzi scheme to the detriment of TGC and its investors and/or creditors, as determined by the Illinois District Court in the TRO and PI Orders.

58.     TGC made the Transfers in furtherance of that fraudulent scheme and Ponzi scheme.

59.     At the time that TGC made the Transfers, Courtright removed and/or concealed assets of TGC from the reach of its investors and/or creditors.

60.     TGC made the Transfers at Courtright's direction, as a result of his fraudulent domination, adverse interest in, and control of TGC and as part of his continued breaches of his fiduciary duties to TGC.

{02058831;v2 }

61.     Thus, TGC had the actual intent to delay, hinder, or defraud creditors, and made the Transfers to delay, hinder, or defraud TGC's creditors.  Consequently, the Transfers were inherently fraudulent pursuant to Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act.

62.     Because the Transfers were fraudulent under Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act, the Receiver may avoid the Transfers, pursuant to Section 8(a) of the Illinois Uniform Fraudulent Transfer Act.

63.     As a direct and proximate result of TGC's fraudulent Transfers to Defendant, the Receivership Estate has been damaged or otherwise diminished in the amount of at least $429,960.34, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the investors and/or creditors who were defrauded by TGC and its principal Courtright.

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendant: (1) determining that the Transfers from TGC to Defendant were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendant in the full amount of the Transfers received by Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## COUNT II

### Violations of Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act
### 740 ILCS § 160/5(a)(2)

64.     Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     Section 5(a)(2) of the Illinois Uniform Fraudulent Transfer Act provides:

14

Sec. 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

> or

> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a)(2).

66.    The Receiver acting on behalf, and standing in the shoes, of TGC has standing within the meaning of the Illinois Uniform Fraudulent Transfer Act to seek the return of fraudulent transfers that TGC made to Defendant pursuant to the constructive fraud prong of the Act. 740 ILCS 160/5(a)(2).

67.    The Transfers to Defendant were made without TGC receiving reasonably equivalent value in exchange for the Transfers or obligations incurred.

68.    Any services that Defendant may have provided to TGC only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendant did not provide any reasonably equivalent value or any other benefit to TGC but rather increased the damages suffered by TGC by increasing the amounts owed to investors and creditors which will be reflected in any restitution that TGC will be required to pay.

69.    Also, the Transfers occurred when TGC's remaining assets were unreasonably small in relation to the business transaction(s) and when TGC intended to incur or believed, or

15

{02058831;v2 }

reasonably should have believed, that TGC would incur debts beyond its abilities to pay as they became due.

70.    As a direct and proximate result of TGC's fraudulent Transfers to Defendant, the Receivership Estate has been damaged or otherwise diminished in the amount of at least $429,960.34, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the investors and/or creditors who were defrauded by TGC and its principal Courtright.

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendant: (1) determining that the Transfers from TGC to Defendant were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendant in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## COUNT III

### Unjust Enrichment

71.    Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.    TGC conferred a benefit on Defendant Longcore when it made the Transfers to him in the amount of at least $429,960.34, all of which were derived from the fraudulent scheme orchestrated by Courtright through TGC.

{02058831;v2 }

73.     Defendant had knowledge of the benefit Defendant received from TGC as a result of the Transfers and voluntarily accepted and retained the benefit conferred.

74.     It is inherently unfair and inequitable violating fundamental principles of justice, equity and good conscience that the funds of investors defrauded in TGC's fraudulent scheme are retained by and used to personally benefit Defendant (who knew or should have known of TGC's fraudulent scheme as an insider of TGC), rather than being returned to the Receivership Estate for the benefit of all of the defrauded investors and creditors.

75.     As a direct and proximate result of Defendant's retention of at least the $429,960.34 that TGC fraudulently transferred to Defendant, the Receivership Estate has been damaged or diminished, and, under the circumstances, equity dictates that Defendant should return the funds received from TGC and turn over any assets they may have acquired with those funds to the Receiver for the benefit of all of the defrauded investors and creditors.

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendant: (1) determining that the Transfers from TGC to Defendant were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendant in the full amount of the Transfers received by Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## COUNT IV

### Aiding and Abetting Fraud

76.     Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

17

{02058831;v2 }

77.     As set forth above, Courtright was operating TGC as a fraudulent scheme and as a Ponzi scheme to the detriment of TGC and its investors and/or creditors, as determined by the Court in the TRO and PI Orders.

78.     In Defendant Longcore's role as the financial controller for TGC, Longcore was significantly involved in TGC's accounting processes, and oversaw all incoming and outgoing wires, as well as the financial transactions of TGC. As such, Defendant Longcore knowingly and substantially assisted Courtright in perpetuating the fraudulent scheme and Ponzi scheme over the course of more than two years by, among other things, making and receiving payments to investors on behalf of TGC, all while knowing that the websites generated substantially less than the amount TGC was paying to them.

79.     At the time Defendant Longcore provided assistance to Courtright, Longcore was regularly aware of his role as part of the fraudulent scheme and Ponzi scheme.

80.     As a direct and proximate result of Defendant Longcore's conduct, TGC sustained damages.

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendant for compensatory damages and/or restitution, interest, costs, and for such further relief as may be just and proper.

## COUNT V

### Aiding and Abetting Breach of Fiduciary Duty

81.     Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 80 of this Complaint as if fully set forth herein.

{02058831;v2 }

82.     As set forth above, Courtright was operating TGC as a fraudulent scheme and as a Ponzi scheme to the detriment of TGC and its investors and/or creditors, as determined by the Court in the TRO and PI Orders.

83.     By defrauding TGC's investors and operating a Ponzi scheme, Courtright breached his fiduciary duty to TGC's investors to safeguard their investments and not use their investment funds for his own personal benefit.

84.     In Defendant Longcore's role as the financial controller for TGC, Longcore was significantly involved in TGC's accounting processes, and oversaw all incoming and outgoing wires, as well as the financial transactions of TGC.  As such, Defendant Longcore knowingly and substantially assisted Courtright in breaching his fiduciary duty to investors over the course of more than two years by, among other things, making and receiving payments to investors on behalf of TGC, all while knowing that the websites generated substantially less than the amount TGC was paying to them.

85.     At the time Defendant Longcore provided assistance to Courtright, Longcore was regularly aware of his role as part of the fraudulent scheme and Ponzi scheme.

86.     As a direct and proximate result of Defendant Longcore's conduct, TGC sustained damages.

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendant for compensatory damages and/or restitution, interest, costs, and for such further relief as may be just and proper.

{02058831;v2 }

Respectfully submitted,

SEMANOFF ORMSBY
 GREENBERG & TORCHIA, LLC

By:  /s/ Stephen C. Goldblum
STEPHEN C. GOLDBLUM, ESQ.
PA Bar No. 83927
2617 Huntingdon Pike
Huntingdon Valley, PA  19006
(215) 887-0200
sgoldblum@sogtlaw.com

and

/s/ Kenneth Dante Murena

Kenneth Dante Murena, Esq.
Florida Bar No. 147486
kmurena@dvllp.com
Christine M. Dimitriou, Esq.
Florida Bar No. 99381
cdimitriou@dvllp.com
Damian & Valori LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
Telephone:  (305) 371-3960
Facsimile:  (305) 371-3965
*Pro Hac Vice Applications Pending*

*Counsel for Melanie E. Damian,
Court-Appointed Receiver*

{02058831;v2 }

# EXHIBIT "A"

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT
D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III
CASE NO: 1:19-CV-08454
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

## Transfers to William Arthur Longcore

Source: QuickBooks, Heartland Bank 5912 records, PNC Bank 9798 records, and Amex 71006 records.

| Bank Account | GL Date | Statement Clearing Date | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| 1072 Bill.com | 09/14/17 | | Longcore, William A. | - | 1.00 |
| 1072 Bill.com | 09/28/17 | | Longcore, William A. | - | 1.00 |
| 1072 Bill.com | 10/05/17 | | Longcore, William A. | - | 673.17 |
| 1072 Bill.com | 10/11/17 | | Longcore, William A. | - | 0.25 |
| 1072 Bill.com | 10/12/17 | | Longcore, William A. | - | 0.50 |
| 1072 Bill.com | 11/02/17 | | Longcore, William A. | - | 0.25 |
| 1072 Bill.com | 11/02/17 | | Longcore, William A. | - | 61.47 |
| 1072 Bill.com | 11/08/17 | | Longcore, William A. | - | 211.91 |
| HB-5912 | 11/27/17 | | Longcore, William A. | - | 0.75 |
| 1072 Bill.com | 12/26/17 | | Longcore, William A. | - | 680.21 |
| HB-5912 | 12/28/17 | | Longcore, William A. | 1.00 | - |
| 1072 Bill.com | 01/12/18 | | Longcore, William A. | - | 39.21 |
| 1072 Bill.com | 02/02/18 | | Longcore, William A. | - | 2,066.97 |
| 1072 Bill.com | 02/13/18 | | Longcore, William A. | - | 3,200.00 |
| HB-5912 | | 02/16/18 | Longcore, William A. | - | 53.30 |
| 1072 Bill.com | 02/20/18 | | Longcore, William A. | - | 49.95 |
| 1072 Bill.com | 02/21/18 | | Longcore, William A. | - | 3,200.00 |
| HB-5912 | | 02/23/18 | Longcore, William A. | - | 272.48 |
| 1072 Bill.com | 02/26/18 | | Longcore, William A. | - | 68.87 |
| 1072 Bill.com | 02/28/18 | | Longcore, William A. | - | 3,200.00 |
| HB-5912 | | 03/02/18 | Longcore, William A. | - | 202.30 |
| 1020 Paypal - Main | 03/04/18 | | Longcore, William A. | - | 1.00 |
| 1072 Bill.com | 03/06/18 | | Longcore, William A. | - | 3,200.00 |
| HB-5912 | | 03/09/18 | Longcore, William A. | - | 202.65 |
| 1072 Bill.com | 03/14/18 | | Longcore, William A. | - | 3,200.00 |
| HB-5912 | | 03/16/18 | Longcore, William A. | - | 119.62 |
| 1072 Bill.com | 03/19/18 | | Longcore, William A. | - | 49.80 |
| 1072 Bill.com | 03/21/18 | | Longcore, William A. | - | 3,200.00 |
| HB-5912 | | 03/23/18 | Longcore, William A. | - | 376.22 |
| 1072 Bill.com | 03/23/18 | | Longcore, William A. | - | 184.99 |
| 1072 Bill.com | 03/27/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 03/29/18 | | Longcore, William A. | - | 17.88 |
| 1072 Bill.com | 03/29/18 | | Longcore, William A. | - | 2,475.00 |
| HB-5912 | | 03/30/18 | Longcore, William A. | - | 382.86 |
| 1072 Bill.com | 04/04/18 | | Longcore, William A. | - | 3,200.00 |
| HB-5912 | | 04/06/18 | Longcore, William A. | - | 220.98 |
| 1072 Bill.com | 04/11/18 | | Longcore, William A. | - | 3,200.00 |
| HB-5912 | | 04/13/18 | Longcore, William A. | - | 291.48 |
| 1072 Bill.com | 04/20/18 | | Longcore, William A. | - | 3,200.00 |

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT
D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III
CASE NO: 1:19-CV-08454
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

## Transfers to William Arthur Longcore

**Source:** QuickBooks, Heartland Bank 5912 records, PNC Bank 9798 records, and Amex 71006 records.

| Bank Account | GL Date | Statement Clearing Date | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| 1072 Bill.com | 04/25/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 05/01/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 05/04/18 | | Longcore, William A. | - | 16.83 |
| 1072 Bill.com | 05/09/18 | | Longcore, William A. | - | 97.00 |
| 1072 Bill.com | 05/10/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 05/16/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 05/24/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 05/30/18 | | Longcore, William A. | - | 59.18 |
| 1072 Bill.com | 05/31/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 06/07/18 | | Longcore, William A. | - | 2,560.00 |
| 1072 Bill.com | 06/11/18 | | Longcore, William A. | - | 31.03 |
| 1072 Bill.com | 06/12/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 06/12/18 | | Longcore, William A. | - | 847.99 |
| 1072 Bill.com | 06/19/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 06/26/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 07/05/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 07/10/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 07/19/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 07/23/18 | | Longcore, William A. | - | 22.90 |
| 1072 Bill.com | 07/24/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 07/31/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 08/07/18 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 08/14/18 | | Longcore, William A. | - | 475.89 |
| 1072 Bill.com | 08/14/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 08/21/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 08/31/18 | | Longcore, William A. | - | 1,280.00 |
| 1072 Bill.com | 09/06/18 | | Longcore, William A. | - | 2,560.00 |
| 1072 Bill.com | 09/07/18 | | Longcore, William A. | - | 10,061.10 |
| 1072 Bill.com | 09/12/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 09/24/18 | | Longcore, William A. | - | 1,934.47 |
| 1072 Bill.com | 09/24/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 09/26/18 | | Longcore, William A. | - | 3,200.00 |
| 1072 Bill.com | 10/03/18 | | Longcore, William A. | - | 3,200.00 |
| HB-5912 | 10/12/18 | 10/12/18 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 10/12/18 | | Longcore, William A. | - | 1.00 |
| PNC-9798 | 10/18/18 | 10/18/18 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | | 10/22/18 | Longcore, William A. | - | 3,000.00 |
| PNC-9798 | 10/23/18 | 10/23/18 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 10/29/18 | 10/29/18 | Longcore, William A. | - | 3,200.00 |

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

## Transfers to William Arthur Longcore

Source: QuickBooks, Heartland Bank 5912 records, PNC
Bank 9798 records, and Amex 71006 records.

| Bank Account | GL Date | Statement Clearing Date | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| PNC-9798 | 10/30/18 | 10/30/18 | Longcore, William A. | - | 16,666.66 |
| 1072 Bill.com | 10/31/18 | | Longcore, William A. | | 115.51 |
| PNC-9798 | 11/05/18 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 11/13/18 | 11/13/18 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 11/20/18 | 11/20/18 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 11/26/18 | 11/26/18 | Longcore, William A. | - | 2,560.00 |
| PNC-9798 | 12/03/18 | 12/03/18 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 12/10/18 | 12/10/18 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 12/18/18 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 12/26/18 | | Longcore, William A. | - | 475.89 |
| PNC-9798 | 12/26/18 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 12/26/18 | | Longcore, William A. | - | 16.94 |
| PNC-9798 | 01/02/19 | | Longcore, William A. | - | 2,400.00 |
| PNC-9798 | 01/02/19 | | Longcore, William A. | | 47.69 |
| PNC-9798 | 01/08/19 | 01/08/19 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 01/14/19 | 01/14/19 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 01/22/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 01/28/19 | 01/28/19 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 01/29/19 | | Longcore, William A. | - | 57.23 |
| PNC-9798 | 02/04/19 | 02/04/19 | Longcore, William A. | - | 3,200.00 |
| Amex 71006 | | 02/08/19 | Longcore, William A. | 2,164.77 | - |
| Amex 71006 | | 02/08/19 | Longcore, William A. | 1,280.95 | |
| Amex 71006 | | 02/11/19 | Longcore, William A. | 1,160.86 | - |
| PNC-9798 | 02/11/19 | | Longcore, William A. | - | 3,200.00 |
| Amex 71006 | | 02/16/19 | Longcore, William A. | 1,862.86 | - |
| Amex 71006 | | 02/18/19 | Longcore, William A. | 211.07 | - |
| PNC-9798 | 02/18/19 | | Longcore, William A. | - | 3,200.00 |
| Amex 71006 | | 02/23/19 | Longcore, William A. | 2,202.00 | - |
| PNC-9798 | 02/25/19 | 02/25/19 | Longcore, William A. | - | 3,200.00 |
| Amex 71006 | | 03/03/19 | Longcore, William A. | 2,367.36 | |
| PNC-9798 | 03/04/19 | | Longcore, William A. | - | 3,200.00 |
| Amex 71006 | | 03/11/19 | Longcore, William A. | 2,174.37 | |
| PNC-9798 | 03/14/19 | | Longcore, William A. | - | 1,920.00 |
| Amex 71006 | | 03/16/19 | Longcore, William A. | 2,271.84 | - |
| PNC-9798 | 03/18/19 | | Longcore, William A. | - | 2,640.00 |
| Amex 71006 | | 03/23/19 | Longcore, William A. | 1,914.27 | - |
| PNC-9798 | 03/25/19 | 03/25/19 | Longcore, William A. | - | 3,200.00 |
| Amex 71006 | | 03/31/19 | Longcore, William A. | 2,027.92 | - |
| PNC-9798 | 04/01/19 | | Longcore, William A. | - | 3,200.00 |

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

## Transfers to William Arthur Longcore

Source: QuickBooks, Heartland Bank 5912 records, PNC
Bank 9798 records, and Amex 71006 records.

| Bank Account | GL Date | Statement Clearing Date | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| PNC-9798 | 04/05/19 | 04/08/19 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 04/22/19 | | Longcore, William A. | - | 6,400.00 |
| PNC-9798 | 04/29/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 05/06/19 | 05/06/19 | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 05/13/19 | 05/13/19 | Longcore, William A. | - | 3,200.00 |
| Amex 71006 | | 05/16/19 | Longcore, William A. | 35.25 | - |
| PNC-9798 | 05/20/19 | | Longcore, William A. | - | 3,000.00 |
| PNC-9798 | 05/28/19 | | Longcore, William A. | - | 2,120.00 |
| PNC-9798 | 06/03/19 | | Longcore, William A. | - | 2,000.00 |
| PNC-9798 | 06/10/19 | 06/10/19 | Longcore, William A. | 35,000.00 | - |
| PNC-9798 | 06/17/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 06/28/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 07/01/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | | 07/02/19 | Longcore, William A. | - | 20,000.00 |
| PNC-9798 | | 07/08/19 | Longcore, William A. | - | 7,000.00 |
| PNC-9798 | 07/10/19 | 07/10/19 | Longcore, William A. | 35,000.00 | - |
| PNC-9798 | 07/10/19 | | Longcore, William A. | 5,000.00 | - |
| PNC-9798 | 07/12/19 | | Longcore, William A. | - | 2,560.00 |
| PNC-9798 | | 07/15/19 | Longcore, William A. | - | 15,000.00 |
| PNC-9798 | 07/16/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 07/18/19 | 07/19/19 | Longcore, William A. | - | 50,000.00 |
| PNC-9798 | | 07/23/19 | Longcore, William A. | - | 50,000.00 |
| PNC-9798 | 07/23/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 07/29/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | | 07/30/19 | Longcore, William A. | 1,000,000.00 | - |
| PNC-9798 | | 08/01/19 | Internal Revenue Service f/b/o William Longcore | - | 1,000,000.00 |
| PNC-9798 | 08/06/19 | | Longcore, William A. | - | 3,200.00 |
| Amex 71006 | | 08/09/19 | Longcore, William A. | 86.23 | - |
| Amex 71006 | | 08/09/19 | Longcore, William A. | 200.43 | - |
| PNC-9798 | | 08/12/19 | Longcore, William A. | - | 50,000.00 |
| PNC-9798 | 08/13/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 08/16/19 | 08/16/19 | Longcore, William A. | 55,000.00 | - |
| PNC-9798 | 08/20/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 08/22/19 | 08/22/19 | Longcore, William A. | - | 55,000.00 |
| PNC-9798 | 08/26/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 08/26/19 | | Longcore, William A. | - | 13,750.00 |
| PNC-9798 | 09/03/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 09/09/19 | | Longcore, William A. | - | 3,200.00 |

SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT
D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III
CASE NO: 1:19-CV-08454
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

## Transfers to William Arthur Longcore

**Source:** QuickBooks, Heartland Bank 5912 records, PNC Bank 9798 records, and Amex 71006 records.

| Bank Account | GL Date | Statement Clearing Date | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| PNC-9798 | 09/23/19 | | Longcore, William A. | - | 2,000.00 |
| PNC-9798 | 10/01/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 10/10/19 | | Longcore, William A. | - | 2,560.00 |
| PNC-9798 | 10/17/19 | | Longcore, William A. | - | 3,200.00 |
| PNC-9798 | 11/01/19 | | Longcore, William A. | - | 3,200.00 |
| Amex 71006 | | 11/14/19 | Longcore, William A. | 21.86 | - |
| PNC-9798 | 11/26/19 | | Longcore, William A. | - | 9,600.00 |
| | | | *Total* | **$1,149,983.04** | **$1,579,943.38** |